WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brandee Nees, | No. CV-21-01134-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| City of Phoenix, et al., | |
| Defendants. | |

Pending before the Court is the City of Phoenix, Jeri Williams, John Ferragamo, and Jeff Cooke's ("Defendants") Motion to Dismiss (Doc. 8.)  For the reasons below, Defendants' Motion is granted in part and denied in part.[1]

## BACKGROUND

The Court construes all factual allegations in the Complaint as true.  (Doc. 1-3.)  At 10:19 PM on May 21, 2020, Ryan Whitaker and Plaintiff were playing a video game and listening to music in the apartment they shared.  (Doc. 1-3 at 5.)  Their upstairs neighbor called 911 to make a noise complaint.  When the neighbor thought that police did not respond quickly enough, the neighbor again called 911, this time saying that the altercation on the floor below was "physical."  The 911 call was raised to high priority.

Defendants Cooke and Ferragamo ("the Officer Defendants"), officers with the

---

[1] Plaintiff's request for oral argument is denied because the parties have had an adequate opportunity to discuss the law and evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Invrs. Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

Phoenix Police Department, arrived on scene and knocked on the apartment door. (Doc. 1-3 at 6.) Because neither officer was standing in front of the door, Mr. Whitaker could not see the officers through the peephole of his apartment. Based on the time of day and lack of visibility, Mr. Whitaker was concerned that there might be danger. Because of these concerns, Mr. Whitaker retrieved his handgun before opening the door. His handgun was by his side. Mr. Whitaker opened the door and, upon realizing that the two Defendants were police officers, he pointed his handgun to the ground, put that hand behind his back, and began to lower to his knees as a sign of submission. Defendant Cooke then fired three shots, two of which hit Mr. Whitaker in the back and abdomen. (Doc. 1-3 at 7.) The third entered the wall near where Plaintiff was standing.

While Mr. Whitaker lay fatally injured, Defendant Ferragamo started asking Plaintiff questions. Defendant Ferragamo did not allow Plaintiff to be near Mr. Whitaker as he suffered. Plaintiff was then removed from the apartment, and Mr. Whitaker died due to his injuries. (Doc. 1-3 at 8.) Plaintiff filed this lawsuit against the City of Phoenix, the Chief of Police, and the Officer Defendants, alleging violations of the Fourteenth Amendment, negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, and negligent hiring, training, and supervision. (Doc. 1-3.)

## DISCUSSION

Defendants request that Plaintiff's Complaint be dismissed for failure to state a claim. Plaintiff contests dismissal but requests leave to amend if dismissal is granted. Because the Court grants Defendants' Motion in part, it will also consider Plaintiff's request for leave to amend.

## I. Motion to Dismiss

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When analyzing a complaint for failure to state a claim, "allegations of material

1   fact are taken as true and construed in the light most favorable to the nonmoving party."

2   *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996).  Legal conclusions couched as factual

3   allegations are not given a presumption of truthfulness, however, and "conclusory

4   allegations of law and unwarranted inferences are not sufficient to defeat a motion to

5   dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

### A.  Substantive Due Process

7   Plaintiff alleges that Defendants violated her substantive due process rights by firing

8   into her apartment and striking the wall beside her.  (Doc. 1-3 at 7); (Doc. 20 at 5.)  "The

9   Fourteenth Amendment's Due Process Clause extends only to those governmental actions

10  that deprive one of a life, liberty, or property interest of constitutional magnitude."

11  *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 370 (9th Cir. 1998).  Excessive

12  use of force claims are usually considered under the Fourth Amendment; however, when a

13  plaintiff has been neither arrested nor seized, the proper analysis is under substantive due

14  process.  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998).  To prevail on a

15  substantive due process claim in this context, "Plaintiff[] must show that an officer's

16  conduct 'shocks the conscience.'"  *Nicholson v. City of Los Angeles*, 935 F.3d 685, 692

17  (9th Cir. 2019) (quoting *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010)).

18  The Officer Defendants, however, allege that they are entitled to qualified immunity

19  on Plaintiff's due process claim.  Qualified immunity is "an entitlement not to stand trial

20  or face the other burdens of litigation," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), and

21  should be resolved "at the earliest possible stage of the litigation."  *Saucier v. Katz*, 533

22  U.S. 194, 200–01 (2001).  To do so, courts engage in a two-prong inquiry.  First, viewing

23  the facts in the light most favorable to the plaintiff, the court determines whether the

24  officers' conduct violated a federal right.  *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014)

25  (per curiam); *Saucier*, 533 U.S. at 201.  Second, the court determines whether the right was

26  "clearly established" at the time the violation occurred.  *Tolan*, 134 S. Ct. at 1866.  The

27  Court may engage the two prongs of the qualified immunity test in either order.  *Pearson*

28  *v. Callahan*, 555 U.S. 223, 236 (2009).  Here, because Plaintiff has failed to establish that

her rights were clearly established, the Court considers only the second element.

Plaintiff fails to establish that any liberty interest was violated by the Officer Defendants' conduct.  Plaintiff expressly disclaims any argument that her liberty interest is premised on a familial relationship, (Doc. 20 at 5), she does not allege that she was harmed by the stray bullet, and she does not allege that the stray bullet amounted to a "seizure" and thus infringed her Fourth Amendment rights.  (Doc. 1-3 at 8.)  Plaintiff's lone cited case, *Coon v. Ledbetter*, 780 F.2d 1158, 1160–61 (5th Cir. 1986), held that the plaintiff had properly alleged a Fourth Amendment violation because police had fired into the trailer where she was present at the time.  But Plaintiff does not allege a Fourth Amendment violation.  The Court could find no case in the Ninth Circuit—and Plaintiff cites none—where a court held that a bystander *almost* being shot implicates a liberty interest,[2] let alone one that amounts to conduct that "shocks the conscience" as required by substantive due process. *Harmon v. City of Arlington*, 478 F. Supp. 3d 561, 571 (N.D. Tex. 2020) ("there is no constitutional right to be free from witnessing . . . police action."); *cf. Rodriguez v. City of Fresno*, 819 F. Supp. 2d 937, 950 (E.D. Cal. 2011) (granting summary judgment and holding that in bystander cases in which there has been no seizure, a defendant's conduct must be measured in relation to the plaintiff, not the intended target).  Plaintiff has failed to establish that her rights were clearly established, and the Officer Defendants are immune from liability.

### B.  Negligence/Gross Negligence

Arizona law does not allow recovery for negligence if liability is based on an intentional act. *Ryan v. Napier*, 245 Ariz. 54, 60 (2018).  A negligence claim, therefore, must sound in "conduct that is independent of the intentional use of force." *Id.* at 62.  Plaintiff's negligence claim is premised on the Officer Defendants' "discharging their

---

[2] Although the Ninth Circuit has held that a show of force that results in no injury may be unconstitutional under the Fourth Amendment, the Court could find no case in which that holding had been extended to the Fourteenth Amendment context for bystanders who were not the targets of police action. *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1014–15 (9th Cir. 2002); *cf. Beitch v. Wheeler*, No. CV 15-00872-VBF (GJS), 2015 WL 13752415, at *4–5 (C.D. Cal. Nov. 16, 2015) (pointing a gun at unarmed suspect sufficient to plead substantive due process claim).

firearm in the direction of a[n] innocent bystander" and "using excessive force and mortally wounding an individual in [front] of his or her significant other."  (Doc. 1-3 at 10.)  This claim is clearly barred by *Ryan*: "[I]f a defendant acts with the intent to cause a harmful or offensive touching (battery), that same act cannot constitute negligence."  *Ryan*, 245 Ariz. at 60.  Defendants' Motion is granted on this ground.

### C.  Negligent Infliction of Emotional Distress

"To state a negligent infliction of emotional distress claim arising from witnessing another person's injury or death, a plaintiff must establish that she was within the 'zone of danger,' and 'must prove physical injury resulting from the shock of witnessing injury to a closely related person.'"  *State Farm Mut. Auto. Ins. Co. v. Connolly ex rel. Connolly*, 212 Ariz. 417, 420 (Ct. App. 2006) (quoting *Duke v. Cochise Cnty.*, 189 Ariz. 35, 38 (Ct. App. 1996)).  Arizona courts have not yet decided whether an unmarried significant other constitutes a "closely related person."  "Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it."  *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001).  "'[A]bsent controlling authority, federal courts look to existing state law' but refrain from 'predicting potential changes' in that law."  *Barrett-Jackson Auction Co. v. Mountain Sports Int'l Inc.*, No. CV-20-00892-PHX-SRB, 2020 WL 9349176, at *3 (D. Ariz. Sept. 9, 2020) (quoting *Ticknor*, 265 F.3d at 939).

The Arizona courts have provided some guidance on what courts should consider when deciding who constitutes a "closely related person."  Who may recover for NIED depends "entirely on policy considerations."  *Hislop v. Salt River Project Agr. Imp. & Power Dist.*, 197 Ariz. 553, 556–57 (Ct. App. 2000).  One such policy consideration "is Arizona's strong policy interest 'in fully compensating injured plaintiffs to make them whole.'"  *Id.* at 557 (quoting *Bryant v. Silverman*, 146 Ariz. 41, 47 (1985)).  Another is the recognition that many relationships are valued in our society, "encompassing many of the human virtues we cherish, and . . . therefore worthy of consideration for protection under the law of torts when the emotional component of the relationship is negligently harmed."

*Id.* "Notwithstanding these compelling reasons," however, "courts have been slow to extend protection beyond the ambit of the family" because of the "entirely unreasonable burden on all human activity if the defendant who has endangered one person were to be compelled to pay for the lacerated feelings of every other person disturbed by reason of it." *Id.* (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 54, at 366 (5th ed. 1984)). That policy concern is exacerbated "by the obvious difficulty of drawing principled limiting distinctions once bystander recovery moves beyond the category of family." *Id.* Because this area of law continues to develop as modern values change, "the [best] approach is to decide questions of qualifying relationships on a case-by-case basis." *Id.* at 558.

Applying the above policy principles, the Arizona Court of Appeals has noted that a variety of relationships do not qualify as sufficiently close to warrant NIED relief. These include pets; "close human friends; siblings; nonnuclear family members such as grandparents, grandchildren, nieces, nephews, aunts, and uncles"; and "co-worker[s] and friend[s]." *Kaufman v. Langhofer*, 223 Ariz. 249, 256 (Ct. App. 2009); *Hislop*, 197 Ariz. at 558. Although some states have extended recovery for NIED to unmarried cohabitants, Arizona has not expressly done so. *See Dunphy v. Gregor*, 642 A.2d 372 (N.J. 1994); *Graves v. Estabrook*, 818 A.2d 1255 (N.H. 2003); *Richmond v. Shatford*, No. CA 941249, 1995 WL 1146885 (Mass. Sup. Ct. Aug. 8, 1995); *cf. Paugh v. Hanks*, 451 N.E.2d 759, 766–67 (1983). As aptly stated by other state courts, however, there are policy issues that arise when courts extend NIED recovery outside of the family context. *See Biercevicz v. Liberty Mut. Ins. Co.*, 865 A.2d 1267 (Conn. App. Ct. 2004); *Milberger v. KBHL, LLC*, 486 F. Supp. 2d 1156 (D. Haw. 2007); *Elden v. Sheldon*, 758 P.2d 582 (Cal. 1988); *Grotts v. Zahner*, 989 P.2d 415 (Nev. 1999); *Lindsey v. Visitec, Inc.*, 804 F. Supp. 1340 (W.D. Wa. 1992); *Jiminez v. All Am. Rathskeller, Inc.*, No. 4:04-CV-1897, 2005 WL 8167979 (M.D. Pa. Apr. 1, 2005); *Smith v. Toney*, 862 N.E.2d 656 (Ind. 2007). For those reasons, and because Arizona courts have indicated that even close, intimate relationships do not qualify for NIED recovery, the Court declines to adopt the minority view without guidance

1    from the Arizona Supreme Court.  Defendant's Motion is granted as to Plaintiff's claim for

2    NIED.

3    **D.  Intentional Infliction of Emotional Distress**

4        Defendants next seek dismissal of Plaintiff's claim for intentional infliction of

5    emotional distress ("IIED").  To prove emotional distress, the plaintiff must prove three

6    elements: "first, the conduct by the defendant must be 'extreme' and "outrageous'; second,

7    the defendant must either intend to cause emotional distress or recklessly disregard the near

8    certainty that such distress will result from his conduct; and third, severe emotional distress

9    must indeed occur as a result of defendant's conduct.  *Ford v. Revlon, Inc.*, 153 Ariz. 38,

10   43 (1987).  "The trial court determines whether the acts at issue are sufficiently outrageous

11   to state a claim for relief; however, if reasonable minds could differ about whether the

12   conduct is sufficiently outrageous, the issue should be decided by a jury."  *Johnson v.*

13   *McDonald*, 197 Ariz. 155, 160 (Ct. App. 1999).  Unlike NIED, IIED does not require a

14   familial relationship for bystander recovery: "Where the "extreme and outrageous conduct

15   . . . is directed at a third person, the actor is subject to liability if he intentionally or

16   recklessly causes severe emotional distress . . . to any . . . person who is present at the time,

17   if such distress results in bodily harm."  Restatement (Second) of Torts § 46(2)(b) (Am. L.

18   Inst. 1965).  Although Arizona courts have not explicitly adopted bystander recovery for

19   IIED, they have explicitly accepted § 46 of the Restatement, *Ford*, 153 Ariz. at 43, and

20   "absent case law to the contrary, [Arizona] usually follows the Restatement."  *Keck v.*

21   *Jackson*, 122 Ariz. 114, 116 (1979); *see also McKee v. State*, 241 Ariz. 377, 384–85 (Ct.

22   App. 2016) (citing § 46(2) and holding that "Appellant ha[d] failed to allege that she was

23   present at the time of the allegedly extreme and outrageous conduct leading to her son's

24   death, or that any of defendants' conduct was directed at her").

25       **1.  Extreme and Outrageous**

26       For a defendant's conduct to be sufficiently "extreme and outrageous" to warrant

27   liability, the conduct must be "so outrageous in character, and so extreme in degree, as to

28   go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

intolerable in a civilized community." *Ford*, 153 Ariz. at 43 (quoting Restatement (Second) of Torts § 46 cmt. d).  "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" will not suffice. *Midas Muffler Shop v. Ellison*, 133 Ariz. 194, 198 (Ct. App. 1982) (quoting Restatement (Second) of Torts § 46 cmt. d).  When assessing the character of the defendant's conduct, courts may consider, among other things, "the position occupied by the defendant . . . [and] defendant's knowledge that the plaintiff is peculiarly susceptible to emotional distress by reason of some physical or mental condition." *Lucchesi v. Frederic N. Stimmell, M.D., Ltd.*, 149 Ariz. 76, 79 (1986) (citations omitted).

At this preliminary stage, Plaintiff has properly pleaded conduct that, if proven, a reasonable jury could find sufficiently "extreme and outrageous."  Plaintiff alleges that the Defendant Officers arrived at Mr. Whitaker's residence late at night and positioned themselves out of view of the apartment peephole.  Defendant Cooke then proceeded to shoot Mr. Whitaker several times, even though Mr. Whitaker was submitting to the Defendant Officers' demands.[3]  Clearly, the unjustified killing of a human being, as has been plead by Plaintiff, is "intolerable" in a civilized community and goes far beyond "mere insults" or "annoyances."  Restatement (Second) § 46 cmt. d.  Defendants seem to concede this point by arguing that it was not unreasonable for the Defendant Officers to "draw[] their weapons" or "have concerns about the armed status of the unknown person," yet remaining silent—and citing no case—as to whether the unjustified *shooting* itself amounted to extreme and outrageous conduct.  Even the Restatement seems to contemplate liability for police in this situation: "The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, . . . which gives him actual or apparent authority over the other."  Restatement (Second) § 46 cmt. e.  Other courts have held similarly.  *Brown v. Muhlenberg Twp.*, 269 F.3d 205 (3d Cir. 2001) (holding that an unjustified police shooting of pet dog "would permit a trier of fact to return a verdict for

---

[3] Plaintiff points to nothing about Defendant Ferragamo's conduct that would reach the level of "extreme and outrageous."  This claim is therefore dismissed as to Defendant Ferragamo.

the plaintiff" on IIED claim); *Estate of Sauceda v. City of N. Las Vegas*, 380 F. Supp. 3d 1068 (D. Nev. 2019) (denying summary judgment and holding that police shooting of an armed, fleeing suspect could amount to outrageous conduct); *Sullivan v. Warminster Twp.*, 765 F. Supp. 2d 687 (E.D. Pa. 2011) (holding that police shooting of unarmed suspect could amount to extreme and outrageous conduct); *Estate of Randolph v. City of Wichita*, 459 P.3d 802 (Kan. Ct. App. 2020) ("The intentional and unprivileged action of a law enforcement officer in firing four shots into a person's chest in full view of that person's family members would satisfy any acceptable definition of extreme and outrageous."). *But see Thompson v. Williamson Cnty.*, 965 F. Supp. 1026 (M.D. Tenn. 1997) (holding that police shooting of suspect with machete did not amount to extreme and outrageous conduct as a matter of law). Plaintiff has plausibly alleged extreme and outrageous conduct.

### 2. Intent

To show intent, plaintiff must demonstrate that the defendant "intentionally or recklessly" caused severe emotional distress. In Arizona, the requirement has been cast as the "inten[t] to cause emotional distress or [the] reckless[] disregard [of] the near certainty that such distress will result." *Ford*, 153 Ariz. at 43. Plaintiff's claim for IIED can be cast both as a direct and bystander claim. First, Plaintiff alleges that Defendant Cooke knew that there was more than one person in the apartment, (Doc. 1-3 at 5), and thus recklessly disregarded "the near certainty" that emotional distress would result from his allegedly unjustified shooting into an apartment in which he knew another was present. Additionally, because Plaintiff was present at the time of the incident, Plaintiff may also show that Defendant Cooke recklessly disregarded "the near certainty" of emotional distress by unjustifiably shooting Mr. Whitaker, which actually caused Plaintiff to suffer severe emotional distress, including bodily harm. The Court finds that Plaintiff's claims survive under either theory.

Defendants' argument that Plaintiff was not "present" within the meaning of the Restatement is not well taken. Neither party contests that Plaintiff was in the apartment when the shooting took place in the doorway. Moreover, the Complaint clearly states that

*"Plaintiff was present* and . . . witnessed the injuries to Mr. Whitaker." (Doc. 1-3 at 10 (emphasis added).) The Complaint also states that one of Defendant Cooke's bullets "entered the wall near where Plaintiff was standing" and that "Plaintiff appeared in the doorway just after [the shooting]." (Doc. 1-3 at 7.) This is sufficient, at the Motion to Dismiss stage, to plead presence.

### 3. Severe Emotional Distress

Whether a plaintiff has suffered sufficiently severe emotional distress is analyzed on a case-by-case basis. *Lucchesi*, 149 Ariz. at 79. To prevail on the claim, "the distress inflicted [must be] so severe that no reasonable man could be expected to endure it." Restatement (Second) of Torts § 46 cmt. j; *see also Midas*, 133 Ariz. at 199 ("[A] line of demarcation should be drawn between conduct likely to cause mere 'emotional distress' and that causing 'severe emotional distress.'" (quoting *Slocum v. Food Fair Stores of Fla., Inc.*, 100 So. 2d 396, 397 (Fla. 1958))). Neither physical injury nor disabling response is required to constitute "severe emotional distress." *Skousen v. Nidy*, 90 Ariz. 215, 219 (1961). Bystander claims of IIED require a showing of bodily harm in addition to severe emotional distress. Restatement (Second) of Torts § 46(2)(b). Although the Court must determine whether evidence of severe emotional distress can be found, a jury must determine whether such distress actually exists and whether the extreme and outrageous conduct caused it. *Midas*, 133 Ariz. at 197; *Savage v. Boies*, 77 Ariz. 355, 358 (1954).

Plaintiff alleges that she has suffered from "PTSD, anxiety, nervousness, and depression" since the shooting. (Doc. 1-3 at 10–11.) The DSM-5 lists the following as symptoms of PTSD: recurrent and intrusive memories or nightmares of the traumatic event, social withdrawal or estrangement, stress or impairment of relationships, physiological reactions to reminders of the traumatic event, and self-blame.[4] At the Motion to Dismiss stage, Plaintiff's allegations of PTSD, anxiety, nervousness, and depression are sufficient to state a claim for IIED. *See Pankratz v. Willis*, 155 Ariz. 8, 12, 16–17 (Ct. App. 1987)

---

[4] The DSM-5 is a proper object of judicial notice. Fed. R. Evid. 201; *Shaw v. Life Ins. Co. of N.A.*, 144 F. Supp. 3d 1114, 1126–27 (C.D. Cal. 2015) (collecting cases); *Gibson v. Walden Univ., LLC*, 66 F. Supp. 3d 1322, 1325 n.2 (D. Or. 2014).

(anger, depression, headaches, hemorrhoids, and inability to work sufficient to support jury verdict of IIED); *Tavilla v. City of Phx.*, No. 1 CA–CV 10–0429, 2011 WL 4794940, at *7–8 (Ct. App. Oct. 11, 2011) (PTSD, depression, nervousness, and anxiety sufficient to support jury verdict for IIED); *Farsakian v. Kent*, No. CV-20-00141-PHX-MTL, 2020 WL 6363729, at *4 (D. Ariz. Oct. 29, 2020) (terror, crying, weight loss, and loss of appetite sufficient to state a claim for IIED); *Monaco*, 196 Ariz. 299, 302–03 (holding that Arizona courts require a showing of bodily harm to establish NIED, and finding that trouble sleeping, social withdrawal, sleepwalking, PTSD, and depression was sufficient to show bodily harm and to submit NIED claim to jury); *Eichenberger v. Falcon Air Express Inc.*, No. CV–14–00168–PHX–DGC, 2014 WL 3819355 (D. Ariz. Aug. 4, 2014) (emotional distress, sleeplessness, depression, loss of focus and concentration, pain and suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and the loss of enjoyment of life sufficient to plead claim for NIED); Restatement (Second) of Torts § 46 cmt. k ("[S]hock, illness, or other bodily harm . . . affords evidence that the distress is genuine and severe."). Defendants' Motion is denied as to Plaintiff's claim for IIED.

### E. Immunity

Because the Court has found that Plaintiff has sufficiently pleaded a claim against Defendant Cooke, it must now decide whether the Defendant City can be held liable for Defendant Cooke's conduct. Arizona Revised Statutes § 12-820.05(B) limits the liability of public entities for "losses that arise out of and are directly attributable to an act or omission determined by a court to be a criminal felony by a public employee unless the public entity knew of the public employee's propensity for that action." Because Plaintiff does not allege that the City knew of Defendant Cooke's propensity, the material question is whether Defendant Cooke's conduct amounted to a "criminal felony."[5] Homicide is a felony in Arizona. Ariz. Rev. Stat. §§ 13-1101 to -1105. A law enforcement officer's use of deadly force, however, may be justified and preclude criminal liability:

---

[5] This issue is also dispositive of Plaintiff's claim for negligent hiring, training, and supervision. *Gallagher v. Tucson Unified Sch. Dist.*, 237 Ariz. 254 (Ct. App. 2015).

1
2
3

> The use of deadly force by a peace officer against another is justified . . . when the peace officer reasonably believes that it is necessary . . . [t]o defend himself or a third person from what the peace officer reasonably believes to be the use or imminent use of deadly physical force.

*Id.* § 13-410(C)(1).  The Court declines to decide whether Defendant Cooke's conduct was a "felony" based solely on Plaintiff's allegations.  Whether the shooting was justified, especially in light of the fact that Mr. Whitaker possessed a firearm, is more properly considered upon a complete evidentiary record.  *Korff v. City of Phx.*, No. CV-13-02317-PHX-SRB, 2014 WL 12889794, at *2 (D. Ariz. Mar. 26, 2014) ("The Court cannot conclude from the allegations in the Amended Complaint that the City of Phoenix has statutory immunity . . . .");  *Flores v. Maricopa Cnty.*, No. CV–09–0945–PHX–DGC, 2009 WL 2169159, at *3 (D. Ariz. July 17, 2009) (holding that whether the defendants' conduct constituted a felony "should be decided after more thorough briefing by the parties in the context of a motion for summary judgment");  *Dominguez v. Denny*, No. CV 10–1173–PHX–MHM, 2011 WL 905812, at *5 (D. Ariz. Mar. 15, 2011) ("Whether the alleged acts or omissions committed, however, constitute a felony such that the City would be immune under the statute cannot be determined at [the motion to dismiss] stage. . . .").  Defendants' Motion is denied as to Counts IV and V.

Defendants' argument for dismissal of Plaintiff's negligent hiring, training, and supervision claim rests solely on its statutory immunity,[6] which the Court has already denied.  (Doc. 8 at 12–13.)  Because the Court will grant Plaintiff leave to amend her Complaint, however, the Court will briefly address this claim.  Importantly, "[i]n order for the employer to be held liable for negligent hiring, retention or supervision, the employee must have committed a tort."  *Mulhern v. City of Scottsdale*, 165 Ariz. 395, 398 (Ct. App. 1990).  Here, the only tort for which Plaintiff has stated a claim is IIED, which requires that the defendant's conduct be "extreme and outrageous."  The Court is doubtful that any conduct that meets such a high bar, at least in this context, would not be "felonious" under

---

[6] Defendants do argue that the Complaint raises "boilerplate conclusory statements" in support of this claim in its Reply, but the Court will not consider arguments raised for the first time in a Reply.  *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

Arizona law.  Regardless, the Court will not dismiss this claim at this time.

## II.  Leave to Amend

Plaintiff has asked for leave to amend should the Court grant Defendant's Motion. (Doc. 20 at 16.)  Federal Rule of Civil Procedure 15(a) provides that leave to amend shall be freely given when "justice so requires."  Fed. R. Civ. P. 15(a).  "But a district court need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).  Leave to amend lies within "the sound discretion of the trial court"; however, Rule 15's policy favoring amendment "should be applied with extreme liberality."  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).  Because Defendants offer no argument against amendment, and because the Court does not believe amendment is futile, Plaintiff request to amend is granted.

## CONCLUSION

Plaintiff has failed to state a claim for which relief can be granted as to the § 1983 and negligence claims against all Defendants; the NIED claim against Defendants City of Phoenix, Ferragamo, and Cooke; and the IIED claim against Defendant Ferragamo.  She has stated a claim, however, for IIED against Defendants City of Phoenix and Cooke.  The Court declines to dismiss the negligent hiring, training, and supervision claim against Defendants City of Phoenix and Jeri Williams at this time.  Plaintiff may amend her Complaint.

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. 8) is **GRANTED** in part and **DENIED** in part.  All claims are dismissed except Plaintiff's IIED claim against Defendants City of Phoenix and Cooke, and the negligent hiring, training, and supervision claim against Defendants City of Phoenix and Jeri Williams.

**IT IS FURTHER ORDERED** that Plaintiff has 30 days from the date of this order to file an Amended Complaint.  If Plaintiff fails to file an Amended Complaint, the remaining Defendants shall file an Answer within 20 days.

1    **IT IS FURTHER ORDERED** that if Plaintiff fails to file an Amended Complaint

2   within 30 days from the date of this Order, the Clerk of Court shall terminate Defendant

3   Ferragamo from this case.

4        Dated this 28th day of December, 2022.

G. Murray Snow
G. Murray Snow
Chief United States District Judge